IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISHONI WAKIYA-OHUNCO,

                Plaintiff,                No. 3:15-cv-01723-HZ

      v.                                  OPINION & ORDER

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Richard McGinty
McGinty & Belcher, Attorneys
P.O Box 12806
Salem, Oregon 97301

       Attorney for Plaintiff,

Billy Williams
United States Attorney
Janice Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

//

1 – OPINION & ORDER

Jordan Goddard
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Ishoni Wakiya-Ohunco ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II or XVI of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## BACKGROUND

      Plaintiff was fifty-four years old at her alleged disability onset date on June 12, 2010. Tr. 232.[1] Plaintiff graduated from high school and completed two years of college. Tr. 65, 256. Plaintiff filed her SSI and DIB application on August 9, 2010, alleging disability due to a broken arm, post traumatic stress disorder ("PTSD"), and knee problems. Tr. 44, 255. The Commissioner initially denied Plaintiff's application on December 16, 2010, and again after reconsideration on June 13, 2011. Tr. 113, 126. Plaintiff requested a hearing before an ALJ. Tr. 162–63. An administrative hearing was held on December 4, 2012, before ALJ Ruperta Alexis. Tr. 59–86. On January 25, 2013, ALJ Alexis issued a written decision denying Plaintiff's application. Tr. 41–58. Plaintiff sought review by the Appeals Counsel, but was denied, making ALJ Alexis' opinion the Commissioner's final decision that Plaintiff now challenges in this

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF No. 11.

Court. Tr. 1–4. Plaintiff makes five arguments that the ALJ erred by: (1) improperly considering the functional limitations of her severe and non-severe impairments; (2) improperly discrediting Dr. Kay Dieter's opinion; (3) improperly discrediting Plaintiff's testimony; (4) improperly discrediting lay witness Candace Stack's[2] opinion; and (5) formulating Plaintiff's residual functional capacity ("RFC") without substantial evidence. Pl. Br. 5–6, ECF No. 15.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

---

[2] Referred to as Candace Sisk in the ALJ's opinion and the administrative record transcript.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the Act's insured status requirement and had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 46. At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar fracture/curvature of the spine and right knee meniscus tear." Id. The ALJ also found that Plaintiff's fracture of her left humerus, suspicious lump in her left breast, and her medically determinable mental impairment of an affective disorder were not severe impairments. Tr. 47–50.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or equal the severity of the listed impairments. Tr. 50. Next, the ALJ found that Plaintiff had the following RFC:

> [C]laimant has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some exceptions. The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently, and can stand and/or walk, and sit, for about six hours in an eight-hour day with normal breaks. The claimant is limited to frequent use of her left non-dominant extremity for pushing, pulling, reaching, and grasping. The claimant can perform simple repetitive tasks as well as

4 – OPINION & ORDER

> detailed and complex tasks. She can interact appropriately with supervisors, coworkers, and members of the public. She can exercise judgment and make decisions on the performance on task.

Tr. 50–51. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as an instructor of vocational training and as a web designer. Tr. 53–54. Because the ALJ determined at step four that Plaintiff was not disabled, she did not reach step five. Tr. 54.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

I.   **Plaintiff's Functional Limitations Due to Non-severe Impairments**

Plaintiff argues that the ALJ erred by not properly considering all of her impairments, severe and non-severe. Pl. Br. 5. Specifically, Plaintiff contends that the ALJ erred in evaluating her mental impairments. Id. at 6. Plaintiff was diagnosed with depressive disorder, anxiety, and

panic disorder without agoraphobia after the death of her husband in July 2010. Tr. 450–55. Plaintiff argues that these impairments make it difficult for her to leave the house, would cause tardiness and absenteeism, and therefore should have been factored into her RFC. Pl. Br. 7–8.

At step two, he ALJ considers the severity of the claimant's impairment(s). 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. Id. A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions.  20 C.F.R. §§ 404.1521(b), 416.921(b). In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner has explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[;]" see also SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

The Ninth Circuit has explained that the step two severity determination is expressed "in terms of what is 'not severe.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. Id. Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing Yuckert, 482 U.S. at 153–54).

6 – OPINION & ORDER

The ALJ found that Plaintiff's mental health condition was non-severe. Tr. 47. The ALJ provides several bases in support of this finding: inconsistencies regarding Plaintiff's testimony; medical opinion evidence; and special factors demonstrating that her mental impairments were non-severe. Tr. 47–50.

### A. *Inconsistencies Regarding Plaintiff's Testimony*

First, the ALJ found that Plaintiff's claim that she had a severe mental health impairment was inconsistent with medical evidence and internally inconsistent. Tr. 47–48. "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." Magallanes v. Bown, 881 F.2d 747, 750 (9th Cir. 1989). For the ALJ to reject Plaintiff's complaints, she must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (internal quotation marks omitted). Courts follow a two-step analysis for determining whether the ALJ provided clear and convincing reasons for rejecting a plaintiff's subjective testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal quotation marks omitted). "[T]he ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749–50 (9th Cir. 1995) (internal quotation marks omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (internal quotation marks omitted). If the ALJ's credibility

determination is supported by clear and convincing reasons, the court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff claimed that she suffered from anxiety, depression, and PTSD to such a degree that she was afraid to go to school, needed a driver, and had trouble leaving her house. Tr. 47, 282–83, 290. The ALJ found that Plaintiff's claims regarding her mental condition were internally inconsistent and inconsistent with other evidence in the record. Tr. 48. The ALJ noted that Dr. Joseph Evans, an examining physician, observed that following the death of Plaintiff's husband, she was communicating normally and was composed despite her traumatic experience. Tr. 47, 382. Dr. Evans also stated that Plaintiff was able to communicate without undue emotion lability. Tr. 47, 382. A consultative examiner, Dr. Gregory Cole, noted that Plaintiff's mood was good and that she was cooperative during her evaluation. Tr. 47, 452. The ALJ also found that Plaintiff's allegation that she could not leave the house was inconsistent with the statements of Plaintiff's friend, Candace Stack, that Plaintiff went outside on a daily basis and regularly went to the grocery store. Tr. 48, 282–83, 293.

### B. Medical Opinion Evidence

Second, the ALJ considered opinion evidence and concluded that Plaintiff's mental impairment was non-severe. Tr. 48–49. The ALJ gave the opinions of Kordell Kennemer, PsyD, and Joshua Boyd, PsyD, significant weight as State agency psychological consultants and experts on disability case evaluation. Tr. 48. Both noted that Plaintiff performed positively on her mental status examinations and anticipated that her mental health condition would not last a continuous twelve month period and was non-severe. Tr. 48, 96–97, 133. The ALJ gave some weight to the opinion of Dr. Gregory Cole. Tr. 48. Dr. Cole's opinion regarding Plaintiff's level of anxiety was given little weight because it relied on Plaintiff's subjective statements that the ALJ found

incredible. Tr. 48, 455. Plaintiff challenges this credibility determination arguing that there is no evidence that Dr. Cole relied on Plaintiff's statements more than the objective testing and mental status evaluation. Pl. Br. 7. An ALJ may reject a doctor's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Burrell v. Colvin, 775 F.3d 1133, 1140–41 (9th Cir. 2014) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)). The Court finds that the ALJ's reading of the record on this issue was reasonable because Dr. Cole's opinion appears to primarily rely upon Plaintiff's statements made during her interview with him. Tr. 450–455.

Dr. Cole's statements regarding Plaintiff's lack of limitations as to her attention, concentration, and memory were given significant weight because it was consistent with Plaintiff's lack of mental health treatment and mental status examination. Tr. 48–49, 455. The ALJ gave the opinion of Kay Dieter, MD, little weight. Tr. 48–49. Plaintiff challenges the ALJ's treatment of Dr. Dieter's opinion separately and the Court will discuss that in greater detail below.

C. *The ALJ's Application of "Paragraph B" Criteria to Plaintiff's Mental Impairments*

Third, the ALJ performed a special technique for evaluating psychiatric impairments under the "paragraph B" factors. Tr. 49–50; 20 C.F.R. § 202.1520a(c), (d). The ALJ assessed Plaintiff's mental impairment by considering her: (1) daily living activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Tr. 49. Social Security regulations state: "If we rate the degree of your limitation in the first three function areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520a(d)(1).

The ALJ found that Plaintiff's condition as mild in the first three categories and that she had no episodes of decompensation. Tr. 49–50. The ALJ bolstered her conclusion with the opinions of Drs. Kennemer and Boyd who opined that Plaintiff had mild limitations in the first two categories, no limitations in the third, and no episodes of decompensation. Tr. 50, 97, 134. Thus, the ALJ ultimately concluded that Plaintiff's mental impairment was non-severe. Tr. 49–50.

The ALJ's conclusion that Plaintiff's mental impairment was non-severe was supported by substantial evidence and the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony on this issue. Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Vasquez, 572 F.3d at 591 (internal quotation omitted). The ALJ's well-reasoned opinion was supported by the record as a whole and the Court may not substitute its own judgment for the ALJ's. Massachi, 486 F.3d at 1152. Further, the ALJ properly discredited Plaintiff's testimony as to whether her mental impairments were severe by pointing to inconsistencies between the testimony and several other sources of evidence in the record.

**II.    Medical Opinion of Dr. Dieter**

Next, Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Dieter, an examining psychiatrist. Pl. Br. 8–13. Plaintiff contends that substantial evidence did not support the ALJ's decision to accord Dr. Dieter's opinion little weight. Id. at 8. Dr. Dieter opined that Plaintiff would have difficulty completing simple tasks and interacting with others. Tr. 438.

In Social Security cases there are three types of medical opinions each accorded different weight. Valentine, 574 F.3d at 692. The opinions of treating physicians are typically given more weight than examining physicians, and those of examining physicians are given more weight than nonexamining physicians. Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1222 (9th

Cir. 2010). An ALJ may reject the un-contradicted opinion of an examining doctor only for clear and convincing reasons supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Specific and legitimate reasons include the opinion's reliance on Plaintiff's discredited complaints, inconsistencies with the medical record and Plaintiff's own testimony and Plaintiff's daily activities. Tommasetti, 533 F.3d at 1041–42. "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

The ALJ provided several grounds for giving Dieter's opinion little weight. Tr. 48–49. First, the ALJ found Dr. Dieter's opinion was vague because it did not describe what Plaintiff was capable of doing nor did it indicate whether Plaintiff's condition would last for twelve months. Tr. 48, 438. Second, the ALJ found that Dr. Dieter's opinion was internally inconsistent in that she described Plaintiff as simultaneously "pleasant and cooperative" and "angry, irritable, and depressed." Tr. 48–49. Third, the ALJ found that Dieter's suggestion that Plaintiff could not perform simple tasks was inconsistent with her notes regarding Plaintiff's mental status examination and that Plaintiff was paying bills and looking for work. Tr. 49, 436–37. Finally, the ALJ found that Dr. Dieter's opinion was inconsistent with the record as a whole; Dr. Dieter's claim that Plaintiff could not perform simple tasks was inconsistent with Plaintiff's ability to independently live and manage her household. Tr. 49.

The ALJ's decision to accord Dr. Dieter's opinion little weight was supported by substantial evidence. First, Dr. Dieter's examination of Plaintiff was largely based on Plaintiff's

11 – OPINION & ORDER

own subjective complaints. Tr. 433–36. Regarding the opinion's vagueness as to Plaintiff's capabilities and duration of her impairment, Dr. Dieter's opined that Plaintiff's "ability to interact with coworkers, supervisors, and the public, as well as tolerate stress in the work environment is also impaired without appropriate treatment." Tr. 438. The ALJ also found that Dr. Dieter did not indicate whether Plaintiff's condition would last twelve months and that her opinion actually suggested that Plaintiff would hopefully improve dramatically with treatment. Tr. 48, 438.

Regarding the opinion's internal consistencies, Dr. Dieter described Plaintiff's attitude and behavior as "pleasant and cooperative" and described her mood and affect as "[a]ngry, irritable, and depressed." Tr. 436. While Plaintiff's pleasant attitude and angry mood may not have been mutually exclusive, the evidence is susceptible to more than one interpretation and it was rational for the ALJ to interpret these statements as internally inconsistent. Regarding Plaintiff's daily activities, the Court agrees with the ALJ that Dr. Dieter's opinion that Plaintiff would have difficulty with simple tasks is inconsistent with her own notes. Tr. 49, 436, 438. Dr. Dieter noted that Plaintiff paid the bills, helped with groceries, and was looking for a job. Tr. 436. Further, the ALJ found that Plaintiff's performance on her medical exam was inconsistent with Dr. Dieter's claim that she could not perform simple tasks. Tr. 49, 436–37. It was proper for the ALJ to consider the opinion's consistency with Plaintiff's daily activities and her performance on the mental examination. Tommasetti, 533 F.3d at 1041–42.

### III.     Plaintiff's Subjective Testimony

Next, Plaintiff claims that the ALJ erred because she failed to fully credit Plaintiff's own subjective testimony as to her lack of medical treatment. The ALJ found that Plaintiff's claims regarding her symptoms were belied by the lack of any significant medical treatment. Tr. 51.

"[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks and citation omitted). As discussed above, ALJs must follow a two-step analysis for evaluating the credibility of a Plaintiff's subjective testimony. Vasquez, 572 F.3d at 591. First, the ALJ must determine whether the plaintiff has evidenced an underlying impairment likely to produce the alleged pain or other symptoms through objective medical evidence. Lingenfelter, 504 F.3d at 1036. Second, if there is no evidence of malingering, the ALJ can reject Plaintiff's testimony by offering "specific, clear and convincing reasons for doing so." Id. at 1036 (internal quotation marks omitted). Factors that the ALJ may consider when making credibility determinations include the plaintiff's reputation for truthfulness, work record, testimony of physicians and third parties concerning the scope and severities of the conditions, "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." Orteza, 50 F.3d at 750; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997). Once more, courts may not second guess an ALJ's credibility determination supported by clear and convincing reasons. Thomas, 278 F.3d at 959.

Plaintiff claimed that she could sit for only twenty minutes and needed to take two-hour naps twice per day. Tr. 70, 288. Plaintiff also claimed that after twenty minutes of sitting she would have to lie down for forty minutes because her back locked up. Tr. 51. The ALJ also noted that Plaintiff testified that she had pain and swelling in her legs and feet that caused her to have difficulty standing and walking to the point where she could not walk around the block. Id. Further, Plaintiff testified that standing for more than five minutes or sitting for long periods would cause her knee pain. Id. Plaintiff also testified that she had difficulty using her left arm,

lifting without pain, lifting anything, squatting, bending, reaching, kneeling, climbing stairs, using her hands, and standing for more than five minutes. Tr. 51, 293, 295, 305.

The ALJ found that Plaintiff's lack of significant medical treatment undermined her allegations of severely limiting symptoms. Tr. 51. The ALJ also found that Plaintiff gave inconsistent reasons for refusing a biopsy of a potentially cancerous lump on her breast. Tr. 51–52. Plaintiff testified that she did not seek medical treatment because she was busy caring for her husband and because she lacked finances and insurance. Tr. 51, 64–65. The ALJ noted, however, that Plaintiff testified that she refused a biopsy because she was "a believer in traditional healing/homeopathy." Tr. 51–52, 383. At an August 2010, medical appointment, Dr. Evans discussed the possibility of a biopsy that Plaintiff said "up front she would not consider radiation, chemo, hormonal or mastectomy treatment if she was found to have breast cancer." Tr. 382. The ALJ also noted in March 2012, Plaintiff "declined biopsy of this previously and said she was undergoing holistic therapy." Tr. 52, 461.

At the hearing, the ALJ asked whether Plaintiff was continuing her pursuit of holistic treatment and she responded that the question was partially correct but that she could not afford anymore medical bills due to her husband's death. Tr. 64–65. The ALJ rejected this testimony because it was inconsistent with her earlier reports that she did not want a biopsy because she wanted to follow holistic treatment. Tr. 52. The ALJ also rejected Plaintiff's claim that she did not use over the counter pain relief medications because she could not afford them. Id. This claim, the ALJ found, was inconsistent with the facts that Plaintiff received housing stabilization funds, borrowed money for school, and was collecting unemployment on a regular basis. Tr. 52, 68–69, 76, 243–45, 436. The ALJ concluded that Plaintiff's "allegations [sic] she cannot afford medical care, medication, or even over the counter pain relief are inconsistent with her

14 – OPINION & ORDER

statements she did not want formal medical treatment and with other evidence on the record." Tr. 52.

The ALJ also rejected Plaintiff's testimony regarding the severity of her limiting symptoms because they were inconsistent with her daily activities. Id. This conclusion was supported by evidence that Plaintiff: lived independently; collected unemployment; paid bills; helped with groceries; looked for work; had no difficulty with personal care or household chores including dishes, sweeping, mopping, vacuuming, and laundry; regularly saw friends; and went to the grocery store. Tr. 52, 436, 454.

Finally, the ALJ found that Plaintiff's subjective testimony was inconsistent with medical opinion evidence and other medical evidence in the record. Plaintiff's treatment notes stated that she demonstrated no swelling or deformities in her extremities and had normal joint range of motion. Tr. 52, 340. The ALJ also found that Plaintiff's testimony was incredible in light of the fact that no treating physician opined about Plaintiff's inability to engage in physical activities or recommended that any restrictions be imposed. Tr. 52–53. Further, the opinions of Drs. Kehrli and Westfall indicated that plaintiff could carry and lift twenty pounds occasionally and ten pounds frequently. Tr. 53, 98–99, 135–36. Both opinions indicated that plaintiff could stand, walk, and sit for approximately six hours in an eight-hour work day with normal breaks. Tr. 98–99, 136. The ALJ noted that those opinions also indicated that Plaintiff could "frequently kneel, crouch, and crawl, and occasionally climb ladders, ropes, or scaffolds." Tr. 53, 99, 136.

The Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence to support her decision to discredit Plaintiff's subjective testimony regarding her physical limitations. Plaintiff's testimony was inconsistent with her daily activities,

other evidence in the record, and medical evidence from several different sources. Light, 119 F.3d at 792.

### IV.    Testimony of Lay Witness Candace Stack

Next, Plaintiff argues that the ALJ erred by not fully crediting the testimony of her friend, Candace Stack. Pl. Br. 15. Stack testified that Plaintiff "is unable to be alone . . . can't quit [sic] get anything finished . . . can barely take care of herself . . . pretty much needs help w/ everything because she is so confused." Tr. 280–81. Stack also checked several boxes indicating that Plaintiff was limited regarding: lifting, squatting, bending, reaching, kneeling, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, and following instructions. Tr. 285.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons for discounting lay witness testimony include: conflicting with medical evidence and inconsistency with the Plaintiff's daily activities. Lewis v. Apfel, 236 F.3d 503, 511–12 (9th Cir. 2001).

In this case, the ALJ provided germane reasons for discounting Stack's testimony. The ALJ found that Stack's statements were inconsistent with Plaintiff's daily activities, and her lack of treatment for her alleged conditions. Tr. 53. The ALJ noted that Stack acknowledged that Plaintiff "had no difficulty with personal care, can prepare meals, goes outside daily, is able to drive, and goes grocery shopping." Tr. 53, 282–84. As previously discussed, Plaintiff's statements regarding the severity of her physical limitations were discredited in light of her lack

of medical treatment and other medical evidence on the record. Those reasons apply with equal force to Stack's claims that Plaintiff was physically severely limited.

## V.  Plaintiff's Residual Functional Capacity

Finally, Plaintiff generally argues that her RFC was not supported by substantial evidence because of the alleged errors discussed above. Because the Court rejects Plaintiff's arguments that the ALJ's opinion was otherwise in error, so too does it reject Plaintiff's argument that the RFC was not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. IT IS SO ORDERED.

DATED this 23 day of November, 2016.

_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER